COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO. 2-06-014-CR

 

 

ADAM RICHARD DAVIES                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I.  Introduction

Appellant
Adam Richard Davies appeals his conviction for driving while intoxicated (DWI)
and sentence of 180 days confinement probated for two years, and $500
fine.  In two points, appellant asserts
that (1) the trial court abused its discretion and violated his right to a fair
and impartial trial by ordering a continuance during trial and (2) violated his
right to a speedy trial.  We affirm. 








II.  Background Facts

At 3:30
a.m. on November 28, 2003, Officer Jeremy Sanchez stopped appellant after
clocking appellant=s vehicle at approximately
twenty-five miles-per-hour over the speed limit.  Officer Sanchez believed that appellant had
been drinking and administered field sobriety tests, which appellant failed.
Consequently, on December 19, 2003, the State charged appellant with DWI.  On September 6, 2005, the voir dire for
appellant=s trial began; the State and
appellant agreed on six jurors and chose no alternates.

The
guilt-innocence phase of appellant=s trial
began on September 7, 2005, and adjourned that evening after the State
rested.  On September 8, 2005, the
proceedings resumed, and the trial court learned that a juror=s
medical condition (kidney stones) prevented his service.  In response to the juror=s
absence, the trial court released the jury, informed them that they would
reconvene on Tuesday or Wednesday of the following week, and issued a sua
sponte order for continuance until the case could reasonably be completed with
all jurors.








After
the jury was excused, appellant=s trial
counsel notified the trial court of scheduling conflicts on both Monday and
Wednesday of the following week. Then, on September 12, 2005, appellant filed a
motion to oppose the continuance, and on October 7, 2005, appellant filed a
motion to dismiss for failure to provide a speedy trial.  The trial court denied the motions without a
hearing on October 11, 2005.

On
October 13, 2005, the trial resumed before the original six jurors.  On October 14, 2005, the jury found appellant
guilty of DWI, and the trial court sentenced him accordingly.

III.  Appellant=s Right
to a Fair and Impartial Trial Claim

In his
first point, appellant argues that the trial court abused its discretion and
violated his right to a fair and impartial trial by ordering a sua sponte
continuance.

A.  Standard of Review

The
standard of review for a trial court=s
ordering of a continuance or recess is abuse of discretion.  Hoppes v. State, 725 S.W.2d 532,
534-35 (Tex. App.BHouston [1st Dist.] 1987, no
pet.).  A trial court abuses its
discretion when it acts arbitrarily or unreasonably.  Gregg v. State, 881 S.W.2d 946, 951
(Tex. App.BCorpus Christi 1994, pet. ref=d).

B.  Applicable Law and Analysis








Appellant=s first
point arises from the trial court=s
decision to recess the case for thirty-one days after learning that a juror had
become ill and was suffering from kidney stones.  Appellant argues that the continuance was
invalid because neither he nor the State requested it.  Appellant also contends that the trial court=s own Amotion
for continuance was made for the purpose of delay and not so that justice could
be done.@  We disagree.

A trial
court necessarily has broad discretion to deal with the many unexpected
situations that arise during trial.  See
Johnson v. State, 583 S.W.2d 399, 405 (Tex. Crim. App. [Panel Op.] 1979); Hoppes,
725 S.W.2d at 534-35.  A judge has only
his common sense to guide him when a juror succumbs to a temporary illness or
other life-altering event.  See
Johnson, 583 S.W.2d at 405 (holding that a judge properly recessed
trial for two days when a juror=s
grandson died).  The trial court=s sua
sponte continuance in this case resulted in a separation of the jury, but
article 35.23 of the Texas Code of Criminal Procedure provides that the trial
court may on its own motion order the jury to be separated before the charge is
read.  Tex.
Code Crim. Proc. Ann. art. 35.23 (Vernon 2006).








Here,
the trial court separated the jury after the presiding juror became ill, but
before the court recessed.  Moreover,
neither party objected to the jury separating. 
On September 8, 2005, immediately after recessing the jurors, the trial
court told the parties that he would grant a mistrial if the sick juror did not
pass his kidney stones by the following Tuesday.  Then, after determining that he lacked
authority to declare a sua sponte mistrial without a motion from the parties,
the trial court granted a sua sponte continuance to delay the trial until it
could Areasonably
be completed with all the jurors available.@

There is
no evidence in the record as to when the sick juror passed his kidney
stones.  However, the trial court could
have realized that kidney stones are a temporary illness, and the presiding
juror=s
absence would be, at the most, a few days. 
Additionally, there is evidence that another juror had to make a trip to
Mexico during the week after September 8, 2005. 
There is nothing in the record to indicate if this was the reason why
the trial did not resume during the week after September 8, 2005, or if the
delay was due to scheduling conflicts. 
However, there is evidence that the trial court did not act arbitrarily
or unreasonably when granting the sua sponte continuance.  See Johnson, 583 S.W.2d at 405.  Therefore, because the trial court did
not abuse its discretion in ordering the continuance, we overrule appellant=s first
point.

IV.  Appellant=s Right
to Speedy Trial Claim

In his
second point, appellant contends that because of the one-month delay of trial,
a key witness became unavailable. 
Therefore, appellant argues, the delay was prejudicial and violated his
right to a speedy trial.

A.  Standard of Review and Applicable Law








According
to both the United States Constitution and the Texas Constitution, every person
shall have the right to a speedy trial.  U.S. Const. amend. VI; Tex. Const. art. I, '
10.  These two rights are independent of
each other; however, the four-factor Barker test is applied to both in
determining whether those rights were violated. 
Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972).

The four
factors to be weighed are (1) the length of the delay, (2) the reason for the
delay, (3) the defendant=s assertion of his right to a
speedy trial, and (4) the prejudice to the defendant resulting from the delay.  Id. 
These factors are balanced and considered together, and no one
factor alone is a necessary or sufficient condition to a finding that the right
has been violated.  Id. at 533, 92
S. Ct. at 2193; Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim. App.
1997).  We review the trial court=s
decision using a bifurcated standard of review: 
reviewing factual components of the trial court=s
decision for an abuse of discretion, and conducting Barker=s
balancing test de novo.  See Zamorano
v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002); State v. Jones,
168 S.W.3d 339, 345 (Tex. App.CDallas
2005, pet. ref=d).  

B.  Analysis

In this
case, the offense occurred on November 28, 2003.  The State charged appellant with DWI on
December 19, 2003.  Although the voir
dire for appellant=s trial did not begin until
September 6, 2005, appellant did not assert his right to a speedy trial at any
point prior to trial.








The
guilt-innocence phase of appellant=s trial
began on September 7, 2005, and adjourned that evening after the State
rested.  On September 8, 2005, the trial
court learned that a juror=s
illness prevented his service.  In
response, the trial court recessed the jury, informed them that they would
reconvene on Tuesday or Wednesday of the following week, and issued a sua
sponte order for continuance until the case could reasonably be completed with
all jurors.  Appellant did not object to
the separation of the jury or assert his right to a speedy trial at this point
either.  On the contrary, after the jury
was excused, appellant=s trial counsel notified the
trial court of scheduling conflicts on both Monday and Wednesday of the
following week.

On
September 12, 2005, appellant filed a motion to oppose the continuance.  It was not until October 7, 2005 that
appellant filed a motion to dismiss for failure to provide a speedy trial.  The trial court denied both motions without a
hearing on October 11, 2005.  On October
13, 2005, the trial resumed before the original six jurors.  With these facts in mind, we turn to the
balancing test set out in Barker. 
Barker, 407 U.S. at 530, 92 S. Ct. at 2192.

1.  Length of Delay








The
first of the Barker factors, the length of the delay, is measured from
the time the defendant is arrested or formally accused.  United States v. Marion, 404 U.S. 307,
321 n.12, 92 S. Ct. 455, 463 n.12 (1971). 
No further inquiry is necessary unless the length of delay was long
enough to be presumptively prejudicial.  Barker,
407 U.S. at 530, 92 S. Ct. at 2192. 
Generally, any delay longer than eight months is presumptively
unreasonable and provokes a speedy trial analysis.  See Harris v. State, 827 S.W.2d 949,
956 (Tex. Crim. App.), cert. denied, 506 U.S. 942 (1992).  

Appellant
argues that the time between formal accusation and trial, December 2003 to
September 2005, coupled with the one-month delay during trial is Apresumptively
prejudicial.@ 
We agree.  The delay in this case
was sufficient to trigger a speedy trial analysis.  See Shaw v. State, 117 S.W.3d 883, 889
(Tex. Crim. App. 2003) (holding that generally, a delay approaching one year is
sufficient to trigger a speedy trial inquiry); Jones, 168 S.W.3d at 347
(same).  We conclude that this factor
weighs against the State.

2.  Reason for the Delay








In
assessing the second of the Barker factors, we are mindful that the
primary burden is on the prosecutor and the courts to ensure that a defendant
is speedily brought to trial.  Thus, the
State has the initial burden of justifying a lengthy delay.  Barker, 407 U.S. at 530, 92 S. Ct. at
2192.  For example, a deliberate attempt
to delay trial in order to hamper the defense weighs heavily against the
State.  Id. at 531, 92 S. Ct. at
2192.  However, a more neutral reason
such as negligence or overcrowded courts is weighed less heavily.  Id. 
       Here, nothing in the record
explains the reason for the length of time between the formal accusation and
trial.  However, appellant=s
argument does not center on that period of time; appellant instead argues that
a one-month delay during trial is uncommonly long.  In this case, a juror=s
temporary illness demanded that the trial court release the jury.  Appellant did not object when the trial court
instructed the jury that they would recess until September 12 (the following
week).  Further, when the jury was
recessed, and the trial court attempted to reset the trial date, appellant=s trial
counsel notified the trial court of a scheduling conflict on both Monday and
Wednesday of the following week. 

The one-month
delay caused by a juror=s temporary illness and
scheduling conflicts was unforeseeable and could not have been anticipated; it
was neither the fault of the trial court, the State, nor the defendant.  However, the delay from arrest to trial was
uncommonly long and was presumptively attributable to the State=s
negligence in bringing the case to trial so late.  Because of this unreasonable delay, we
conclude that this factor weighs against the State.   

3.  Assertion of the Right








Whether
and how a defendant asserts his speedy trial right is closely related to the
other three factors because the strength of his efforts will be shaped by
them.  Id. at 531-32, 92 S. Ct. at
2192-93; Jones, 168 S.W.3d at 348. 
Therefore, the defendant=s
assertion of his speedy trial right is entitled to strong evidentiary weight in
determining whether the defendant is being deprived of the right.  Barker, 407 U.S. at 531-32, 92 S. Ct.
at 2192-93.  Although a defendant=s
failure to seek a speedy trial does not amount to a waiver of his right,
failure to seek a speedy trial makes it difficult for a defendant to prevail on
a speedy trial claim.  See id.  The longer the delay, the more likely it is
that a defendant who really wanted a speedy trial would take some action to
obtain one.  Id.  Thus, a defendant=s inaction
weighs more heavily against a speedy trial violation the longer the delay
becomes.  Id.  And, seeking a dismissal instead of a speedy
trial can weaken a speedy trial claim because it shows a desire to have no
trial rather than a speedy trial.  See
Zamorano, 84 S.W.3d at 651 n.40.

        Here,
appellant did not file a motion affirmatively requesting a speedy trial in the
twenty-two months after he was arrested.  
Instead, appellant waited until after the State had presented it=s case
against him before asserting his right to a speedy trial.  And even then, appellant filed a motion to
dismiss in which the only relief sought was dismissal of the case.  Considering appellant=s
inaction and that his first request was for a dismissal rather than for a
speedy trial, we conclude that this factor weighs heavily against appellant.  See id. 


4.  Prejudice Caused by the Delay








We
assess the final factor of Aprejudice@ in
light of the interests the speedy trial right was intended to protect.  Barker, 407 U.S. at 532, 92 S. Ct. at
2193.  Those interests are (1) to prevent
oppressive pretrial incarceration, (2) to minimize the accused=s
anxiety and concern, and (3) to limit the possibility the defense will be
impaired.  Id.  The defendant bears the initial burden of
establishing prejudice.  Emery v.
State, 881 S.W.2d 702, 709 (Tex. Crim. App. 1994), cert. denied, 513
U.S. 1192 (1995).

According
to appellant, the delay caused him to be unable to call a favorable
witness.  When the defendant=s
prejudice is based upon the unavailability of a witness, the defendant must
show (1) that the witness was unavailable when he was tried, (2) that his
testimony may be relevant and material to his defense, and (3) that due
diligence was exercised in locating the witness.  McCarty v. State, 498 S.W.2d 212, 218
(Tex. Crim. App. 1973); Clarke v. State, 928 S.W.2d 709, 716 (Tex. App.CFort
Worth 1996, pet. ref=d).   








At
trial, appellant asserted that an alleged favorable witness became unavailable
after the jury reconvened on October 13, 2005 because the witness was called to
active duty with the United States Armed Forces.  After appellant made this assertion, the trial
court moved on to discuss other matters without further discussion about the
missing witness and ultimately denied appellant=s
renewed motion to dismiss.  At no time
did appellant attempt to introduce evidence showing that the witness was
unavailable or that he had made diligent attempts to contact him.   Because this information is not in the
record, appellant failed to meet prongs one and three of the McCarty test.  See McCarty, 498 S.W.2d at 218. 

Appellant
also failed to demonstrate the materiality and relevance of the witness=s
testimony.  At trial, the State asked
Officer Sanchez why he did not release appellant=s
vehicle to the passenger after arresting appellant, and Officer Sanchez
answered that he remembered the passenger to be intoxicated.  At this point, the trial court sustained
appellant=s timely objection to relevance
and instructed the jury to disregard Aanything
about the passenger.@ 
The core of appellant=s
argument on this issue is that the witness would testify that he, as a
passenger in appellant=s vehicle, was sober.  Appellant only asserts that the missing
witness would have impeached Officer Sanchez by countering the assertions that
he (the witness) was intoxicated.  However,
upon appellant=s own objection at trial,
testimony regarding the witness=s
sobriety was deemed irrelevant.  

Because
appellant failed to prove all three of the subfactors necessary to establish
prejudice based upon the unavailability of a witness, the fourth Barker
factor weighs heavily against him.  Barker,
407 U.S. at 532, 92 S. Ct. at 2193; McCarty, 498 S.W.2d at 218.  

5.  Balancing the Four Factors








We conclude
that the first two factors weigh in favor of appellant, but the last two
factors weigh heavily against appellant. 
Thus, we agree with the trial court that appellant was not deprived of
his right to a speedy trial, and we conclude the trial court properly denied
appellant=s motion to dismiss.  Accordingly, we overrule appellant=s second
point.  

V.  Conclusion

Having
overruled appellant=s two points, we affirm the
trial court=s judgment.  

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER,
and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: December 21, 2006











[1]See Tex. R. App. P. 47.4.