NO. 07-10-0255-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 

APRIL 14, 2011

_____________________________

 

JIMMY
ESPINOZA,  

 

                                                                                         Appellant

v.

 

THE STATE OF
TEXAS,  

 

                                                                                         Appellee

_____________________________

 

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2002-438,658; HONORABLE CECIL G. PURYEAR,
PRESIDING

_____________________________

 

Memorandum Opinion

_____________________________

 

Before QUINN, C.J., and CAMPBELL
and PIRTLE, JJ.

            Jimmy Espinoza was convicted of
indecency with a child after pleading guilty to the offense.  On appeal, he argues that the indictment
should have been dismissed since he allegedly was denied a speedy trial.  We disagree and affirm the judgment.

            The right to a speedy trial
encompasses not only the mere right to speed but an “orderly expedition” of the
charge.  United States v.
Marion, 404 U.S. 307,
313, 92 S.Ct. 455, 459-60, 30 L.Ed.2d 468 (1971); State
v. Munoz, 991 S.W.2d
818, 821 (Tex. Crim. App. 1999).  In
determining whether both were afforded, four factors must be balanced which
factors consist of 1) the length of the delay, 2) the reason for the delay, 3)
the time at which the defendant asserted the right, and 4) the prejudice, if
any, suffered by the defendant due to the delay.  Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182,
2192, 33 L.Ed.2d 101, 116-17 (1972); Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim. App.
1997). If there is no undue delay, the court has no reason to address the
remaining three factors. State v. Munoz, 991 S.W.2d. at 821.  Finally, in reviewing the trial court’s
denial of the motion to dismiss for lack of a speedy trial, we defer to the
trial court on matters involving the resolution of historical facts, but apply the
law to the four factors de novo. 
Johnson v. State, 954
S.W.2d at 771.  

            Length of Delay

            Appellant was indicted on January 9,
2002, and did not go to trial until 2010. Given that the seventeen-month delay
in Munoz was sufficiently prejudicial to
trigger consideration of the remaining three factors, we deem the seven to
eight-year delay sufficient to do so here. 

            Reason for the Delay

            The reason for the delay does not
appear in the record; apparently, the matter “slipped through the cracks.”  Though an unacceptable explanation and one
that should be avoided, it happens.  And,
while this does not bode well for the State, appellant did not contend that the
prosecutor was responsible for it.[1]  So the factor, while favoring appellant, does
not weigh heavily against the State.[2]  Murphy v. State, 280 S.W.3d 445, 453 (Tex. App.–Fort
Worth 2009, pet. ref’d) (stating that the lack of an
explanation for the delay weighs against the State but not greatly when there
is no evidence that the prosecutor purposefully engaged in dilatory tactics).

            Assertion of Right

            Appellant filed a request for
appointment of counsel on February 6, 2002. 
Nothing in that document mentions a request for a speedy trial.  Appellant then sent the court a letter dated
January 2, 2003, in which he expressed concern about a detainer against him out
of Lubbock County.  He further
stated:  “It is my interst
[sic], and request, that county officials bench warrant me before the court to
face proceedings if necessary, in that so my defense is not further impinged
upon.”  Additionally, a handwritten
notation on the January 2003 letter indicates that it was filed by the clerk
with no action by the court.  And though
appellant testified at the hearing that he wanted a speedy trial, there was no
further communication between him and the court until September 2, 2009.  On the latter date, he again sought the
appointment of counsel.  That letter made
no mention of a request for a speedy trial, however.  And, counsel was appointed for him on
December 17, 2009.  Next, rather than
demand a trial, appellant filed his motion to set aside the indictment for
failure to provide him a speedy trial on May 19, 2010.  This suggests that appellant initially
intended to timely address the accusation, but the intent waned.  One viewing these circumstances could
reasonably deduce that appellant was less than diligent in asserting his right
to a speedy trial.  See
McIntosh v. State, 307
S.W.3d 360, 368 (Tex. App.–San Antonio 2009, pet. ref’d)
(stating that the defendant has the burden to show he acted diligently in
pursuing his right to a speedy trial).

            Prejudice

            A speedy trial is designed to
protect the interests of 1) preventing oppressive pretrial incarceration, 2)
minimizing the anxiety and concern of the accused, and 3) limiting the chance
that the accused’s defense will be impaired.  State v. Munoz, 991 S.W.2d at 826. 
The last of these factors is the most important since the ability to
adequately defend oneself affects the fairness of the
legal system.  Id.  

            We note that appellant was
incarcerated throughout the period between indictment and conviction.  Yet, the loss of his liberty was due to a
previous conviction for burglarizing a habitation and the attendant sentence of
twenty-five years imprisonment.  So, it
cannot be said that any delay in prosecuting the indictment underlying this
appeal exposed him to any oppressive pretrial incarceration.  See
Hill v. State, 213
S.W.3d 533, 541 (Tex. App.–Texarkana 2007, no pet.) (concluding
that the factor weighed against the accused when he was already incarcerated on
another charge).  

            Being already incarcerated also
tends to minimize any complaint about the delay causing appellant to suffer
anxiety about or concern for the loss of his liberty.  And, aside from the allegations that his
ability to gain parole, enjoy educational benefits, or receive some type of
elevated prisoner status were affected, nothing of record suggests that the
delay caused him any other type of mental or physical anxiety or concern.  

            As for the parole issue, appellant
failed to illustrate what the parole laws were and how a pending charge for
indecency with a minor would affect his ability to be paroled.  In fact, the only parole hearing he mentioned
at which the indecency charge was broached occurred in 2001, according to
appellant.  Apparently, there was no
mention of the offense by the parole committee once appellant was indicted a
year later in 2002.  This scenario tends
to suggest that the committee cared more about an  offense before it was formally charged than
after, which, in turn, seems rather illogical and renders appellant’s testimony
a bit suspect.  And, if the topic is not
broached again, one could think that the charge had little impact upon his remaining
in prison, assuming arguendo that his conduct while imprisoned and
prior convictions rendered him subject to parole.  And, as for the impact of the charge on
appellant’s prisoner status and educational opportunities, nothing of record
describes the particular levels available or the criteria for securing a better
status or attending classes.  Nor did
appellant proffer evidence of his conduct while in prison from which one could
begin to infer that he would have garnered better treatment but for the pending
criminal charge.  Simply put, all
depended upon the credibility of the witness involved, i.e. appellant, and the trial court had
the option to find him not credible, especially given the conclusory
nature of the testimony.  

            Finally, appellant claims that the
delay impaired his ability to secure various  witnesses to assist in his
defense.  Yet, the evidence regarding
their availability is mixed at best; its tenor did not obligate the trial court
to find that they were unavailable. 
Moreover, appellant failed to develop the nature of the testimony that
those witnesses purportedly would utter. 
Nor did he illustrate, or attempt to illustrate, that it would favor him
in any way.  Given this deficiency, one
would only be guessing if he was to conclude that the supposed absence of the
witnesses prejudiced appellant.  See
Harrison v. State, 282 S.W.3d 718, 722 (Tex. App.–Amarillo 2009, no pet.) (stating
that to show prejudice due to the unavailability of a witness, the defendant
must provide proof that the witness would have benefited the defense).  This seems especially so when the accused
(who previously suggested that witnesses were needed to help prove his
innocence) eventually admitted his culpability and pled guilty to the charge,
like appellant.

              
In sum, we are troubled by the delay between indictment and trial (or
guilty plea as the case may be), here. 
Yet, it must be remembered that appellant was already in prison for
committing some other felony.  Thus, the
impact upon his liberty wrought by awaiting trial was questionable at
best.  It is difficult to lose what you
do not have.  And, after consideration of
all the Barker
factors, we cannot say
that the efficacy of the process itself was impugned to such an extent that
dismissal of the indictment was warranted.  
Accordingly, the issue is overruled and the judgment is affirmed.

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

Do
not publish.











[1]Counsel
stated at the hearing: “. . . I know the State didn’t have any control over
this, so I’m not saying they’re bad guys.”   






[2]The
State did file one motion for continuance in April 2010, because of the
unavailability of a witness for trial.